Charles R. LITTLE, Plaintiff-Appellant,
Cross-Appellee,

v.

BANKERS LIFE AND CASUALTY COM-
PANY, Defendant-Appellee, Cross-
Appellant.

No. 28283.

United States Court of Appeals,
Fifth Circuit.

May 13, 1970.

Bowling & Coleman, Francis S. Bowl-
ing, Jackson, Miss., Fountain D. Daw-

son, Greenville, Miss., for plaintiff-appellant, cross-appellee.

W. Swan Yerger, Jackson, Miss., for defendant-appellee, cross-appellant.

Before JOHN R. BROWN, Chief Judge, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge.

This Mississippi-based diversity action is predicated upon an insurance company's refusal to pay proceeds allegedly due the named beneficiary under a certificate of insurance the company had issued covering death by accidental bodily injury to the named insured. The policy expressly excluded death by suicide from its coverage, and the insurer denied liability to the beneficiary in part on the ground that the named insured intentionally killed herself. The jury returned a verdict in favor of the insurer, and the District Judge overruled the beneficiary's motion for a new trial. For reasons that follow, we are bound by the jury's specific finding that death of the named insured was intentionally self-inflicted. The judgment that Little take nothing does not amount to a manifest miscarriage of justice, and we cannot say that the District Judge abused his discretion in refusing to grant a new trial. Accordingly, we affirm the judgment of the District Court.

Charles R. Little, the appellant here, commenced this action against Bankers Life and Casualty Company in the Circuit Court of Washington County, Mississippi. He sought to recover the benefits payable under a policy the insurance company had issued covering the death of his wife, Mary, by accidental bodily injury. The suit was removed to federal court by the insurer. A jury trial was subsequently conducted in which both sides adduced testimony regarding the circumstances of Mary Little's death. The case was then submitted to the jury along with certain special interrogatories. In addition to returning a verdict in favor of the insurer, the jury specifically found that Mary Little died as a result of self-destruction rather than accidental bodily injury. At no time before or after the case was submitted to the jury did Charles Little move for a directed verdict in his favor. After the jury verdict was returned, however, he did move for a new trial. His motion in part challenged the sufficiency of (1) the evidence supporting the submission of the cause-of-death issue to the jury and (2) the evidence supporting the specific finding of self-destruction.[1] On this appeal he continues to challenge the sufficiency of that evidence.[2]

■■ In this Circuit it is well established that the sufficiency of the evidence supporting jury submission of a case or the jury's findings is not reviewable on appeal unless the party seeking review has made a motion for a directed verdict in the trial court. *E.g.*, Forgason v. Penrod Drilling Company, 5 Cir., 1969, 409 F.2d 813; Privett v. Dixon, 5 Cir., 1968, 393 F.2d 479; Brown v. Burr-Brown Research Corporation, 5 Cir., 1967, 378 F.2d 822; Pennsylvania National Mutual Cas. Ins. Co. v. Nathan, 5 Cir., 1966, 361 F.2d 18. This rule applies to diversity cases. *See* Lighting Fixture & Elec. Sup. Co. v. Continental

1. Little moved for a new trial on the following grounds: (1) erroneous submission of interrogatories to the jury; (2) erroneous sustaining of objections made by the insurer to Little's evidence; (3) erroneous overruling of Little's objections to questions asked by the insurer; (4) verdict was against the overwhelming weight of the evidence; (5) jury did not follow the undisputed evidence; (6) the insurer did not sustain its burden of proof on the defense that Mrs. Little died from self-destruction; (7) the only verdict that a reasonable jury should have returned was that Mrs. Little died by accidental means; (8) portions of the District Judge's charge to the jury were erroneous; and (9) the Judge's charge placed a higher burden of proof on Little than is required by law.

2. The insurer has filed a cross-appeal charging that a directed verdict should have been granted in its favor. In view of the disposition we make of this case, we omit discussion of this point.

Ins. Co., 5 Cir., 1969, 420 F.2d 1211; Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365 (en banc). The reasons behind the rule are sound. For example, a litigant may not gamble on the jury's verdict and then later question the sufficiency of the evidence on appeal. Taylor v. Gulf States Utilities Company, 5 Cir., 1967, 375 F.2d 949, 950. Similarly, the litigant who has not moved for a directed verdict in the trial court must have been of the view that the evidence made a case for the jury; he should not be permitted on appeal to impute error to the trial judge for sharing that view. See 2B Barron & Holtzoff, Federal Practice and Procedure § 1081, at 424 (Wright rev. ed. 1961). This point is illustrated here. The record shows that a major concern of the beneficiary's in the trial court was that the insurer was moving for a directed verdict in *its* favor.

■■■ Since Little did not move for a directed verdict in the District Court, our review of the sufficiency of the evidence regarding the cause-of-death issue is consequently foreclosed. We may inquire whether there was *any* evidence supporting the submission of the suicide issue and the jury's finding that Mrs. Little's death was a suicide, but we may not question the sufficiency of whatever evidence we do find. Hoover, Inc. v. McCullough Industries, Inc., 5 Cir., 1967, 380 F.2d 798, 801. Our consideration is limited to whether plain error has been committed which, if not noticed, would result in a manifest miscarriage of justice. Forgason v. Penrod Drilling Company, 5 Cir., 1969, 409 F.2d 813; 2B Barron & Holtzoff, Federal Practice and Procedure § 1081, at 425-426 (Wright rev. ed. 1961). No further may we delve. When, as in this case, a motion for a new trial has been made on the ground of insufficient evidence to support the verdict and the like, the failure by the losing party to move for a directed verdict as well still operates to foreclose consideration of the question of sufficiency on appeal, and the appel-

late court may inquire only whether the trial court abused its discretion in overruling the motion for a new trial. Brown v. Burr-Brown Research Corporation, 5 Cir., 1967, 378 F.2d 822, 824; Pruett v. Marshall, 5 Cir., 1960, 283 F.2d 436.

The evidence presented in the District Court regarding the cause of Mrs. Little's death may be summarized as follows. Mrs. Little was found dead, slumped on the front seat of her car, in an isolated area. Under her body was an empty pill bottle. She had recently had this bottle filled with fifty prescription tranquilizers (Doriden). Another bottle, partially full of a different brand of tranquilizer pills (Miltown) was also found in the car, along with a jar of water. The woman's shoes were outside the car. One car window was open, and the gas was three-quarters full. The ignition key was at the "off" position. The car started easily after Mrs. Little was found dead, and there was no indication of a carbon monoxide leak. The decedent's body was discolored in shades of purple, the usual discoloration resulting from death, and pink, the discoloration associated with inhalation of carbon monoxide gas and ingestion of cyanide poisoning. The autopsy performed at a state laboratory produced no evidence that Mrs. Little had ingested Doriden, Miltown, or cyanide poisoning. No test for determining whether she had inhaled carbon monoxide gas was performed. The local doctor, having been unable to pinpoint a specific cause of death, determined that Mrs. Little had died as a result of carbon monoxide poisoning. He based this finding upon the pink discoloration of her body and his failure to find any other cause of death. Testimony was given that the laboratory where the tests for the presence of drugs were made was inadequately equipped and staffed to make the purportedly preferred tests used for determining the presence of Doriden and Miltown. Testimony of a conflicting nature was also given regarding Mrs. Lit-

tle's mental state generally and as it appeared to others shortly before her death.

█ The main thrust of Little's argument before this Court appears to be that the case should not have been submitted to the jury because, as a matter of Mississippi law, the insurer failed to sustain its burden of proof regarding its affirmative defense of suicide. *See* Jefferson Standard Life Ins. Co. v. Jefcoats, 164 Miss. 659, 143 So. 842 (1932). Consequently, Little argues that he was entitled to a judgment in his favor at the close of all the evidence, if not before. On the entire record before us, we cannot say that no evidence supports the jury's conclusion that Mrs. Little did not die accidentally, but instead intentionally took her own life. As a result, we are powerless to set aside that finding. *E.g.*, Hoover, Inc. v. McCullough Industries, Inc., 5 Cir., 1967, 380 F.2d 798. Since we have concluded that submission of the suicide issue to the jury was free of error, the jury's finding controls the result in this case. The policy involved here expressly excludes death by suicide from its coverage. Little, therefore, was foreclosed from recovering the death benefits payable under the policy regardless of whether he complied with other policy conditions such as the notice provision at issue in the trial court.

Affirmed.

JOHN R. BROWN, Chief Judge (concurring).

I concur in the result and all of the opinion. I add this only by way of emphasis.

Here much confusion, appellate uncertainty, and possibly additional proceedings have been avoided by the use of special interrogatories with a general charge. Instead of being faced with that enigma wrapped in a mystery—the unrevealing general verdict—we have a clear indication that the jury found that the insured died as a result of suicide. And because of this the issues here are drawn tight.

The wonderful device of special interrogatories with a general charge (F.R.Civ.P. 49(a)) enable both the trial and appellate Court to know precisely what has been found. Brown, Federal Special Verdicts: The Doubt Eliminator, in Proceedings of the Annual Judicial Conference, Tenth Judicial Circuit of the United States, 44 F.R.D. 245 at 338 (1967). Horne v. Georgia Southern & Fla. Ry. Co., 5 Cir., 1970, 421 F.2d 975, 980 (Brown concurring).