Charles L. POWELL, Plaintiff-Appellant,

v.

MERRIMACK MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellee.

No. 81–7102.

United States Court of Appeals, Eleventh Circuit.

Feb. 1, 1982.

---

G. Michael Hartley, Joseph H. Fowler, Douglasville, Ga., for plaintiff-appellant.

Swift, Currie, McGhee & Hiers, Clayton H. Farnham, Atlanta, Ga., for defendant-appellee.

Before TUTTLE, HILL and JOHNSON, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by the homeowner from a jury verdict denying him recovery against his insurance company for a fire loss which the jury found attributable to the plaintiff's voluntary action.

It was not seriously disputed at the trial or here that the fire at the plaintiff's homeplace was of incendiary origin nor is it disputed that at the time of the fire the plaintiff was deeply indebted on a number

of purchase contracts for motor vehicles and on his home mortgage, a substantial part of which was past due. The fire was first reported at 1:50 a. m. on the morning of November 28, 1977 in the city of Douglasville, Georgia. According to his and his wife's testimony, the plaintiff was at that time spending the night near Clinchfield, Georgia which he stated to be about two hours distance from Douglasville. He and his wife were staying in a motor trailer which he had acquired earlier, as he said, as a place to run his recently started trucking business. They stayed on in the trailer as a residence after the fire.

Shortly before the fire, Mrs. Powell had notified her employer in Douglasville that she and her husband were moving to south Georgia in a couple of weeks. She later claimed that this was an untrue statement which she had made because she wished simply to stay on in Douglasville and help her husband in his business, but didn't have the nerve to tell her employer of that reason for her quitting. Powell's presence at the trailer was verified up to 7:30 o'clock in the evening before the fire was discovered at 1:50 the following morning. No other impartial witness verified the whereabouts of Powell or his wife between these two hours. Powell's plans for the morning of the fire were to have an interview with an Internal Revenue agent at his home.[1]

As stated by the plaintiff in his brief here:

The plaintiff's chief argument for reversal is that the trial judge erred in denying the plaintiff's motion for new trial on the grounds that there was not presented to the jury sufficient evidence to prove that the plaintiff or anyone acting for him had the opportunity to start the fire which destroyed the plaintiff's home.

[1] Powell stated that the interview was to take place in Atlanta, but in fact the Revenue agent appeared at Powell's burnt out house on that morning to conduct the interview. As to the issue of Powell's solvency, it was proven that there was a pending suit against him by the United States for a refund of benefits claimed to have been illegally obtained by him. On the issue of credibility, there was proof that he had been convicted of uttering a counterfeited Government obligation.

The impediment which prevents our considering this argument is that the plaintiff did not make a motion for directed verdict at the conclusion of all the evidence, nor for a judgment notwithstanding the verdict thereafter. It has long been held by this Court that:

> In the absence of a motion for directed verdict, the sufficiency of the evidence supporting the jury's findings is not reviewable on appeal. . . . Federal appellate courts simply do not directly review jury verdicts. The policy underlying this rule is sound: a party is not permitted to gamble on the verdict and later question the sufficiency of the evidence that led to his defeat. . . . Under these circumstances, our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a "manifest miscarriage of justice." *American Lease Plans, Inc. v. Houghton Construction Co.*, 492 F.2d at 35; *Little v. Bankers Life & Casualty Co.*, 426 F.2d 509, 511 (5th Cir. 1970).

*Coughlin v. Capital Cement Co.*, 571 F.2d 290, 297 (5th Cir. 1978).

The appellant here, however, insists that since he filed a motion for new trial immediately following the jury verdict in which he raised the sufficiency issue, this Court should still weigh the sufficiency of the evidence in determining whether the court abused its discretion in not granting the motion for new trial. In *Coughlin, supra* we said:

> When, as in this case, a motion for a new trial has been made on the ground of insufficient evidence to support the verdict and the like, the failure by the losing party to move for a directed verdict . . . still operates to foreclose consideration of the question of sufficiency on appeal, and the appellate court may inquire only whether the trial court abused its discretion in overruling the motion for a new trial.

426 F.2d at 511, *citing Brown v. Burr-Brown Research Corp.*, 378 F.2d 822, 824 (5th Cir. 1967); *Pruett v. Marshall*, 283 F.2d 436, 438 (5th Cir. 1960). Of course, when we review the denial of a motion for new trial, we do not review "sufficiency" in its technical sense. What is in issue is whether there was an "absolute absence of evidence to support the jury's verdict." *Fugitt v. Jones*, 549 F.2d at 1004; *Litherland v. Petrolane Offshore Construction Services, Inc.*, 546 F.2d 129, 135 (5th Cir. 1954). On the basis of our reading of the record and understanding of the standards outlined above, we conclude that plaintiffs' position is meritless.

■ Here, too, we conclude that the appellant cannot prevail on the theory that there was an "absolute absence of evidence to support the jury's verdict." As we have noted above, there was ample motive demonstrated in the financial stringencies faced by the plaintiff, there was undisputed evidence that the fire had been caused by someone who had carefully placed flammable fluids throughout the house; and there is no proof by any impartial witness that the plaintiff was actually absent from the house at the time of the fire. Moreover, the credibility of both the plaintiff and his wife were seriously challenged. As to him, it was shown that he had been sued by the United States within a period of six months prior to the trial, which he failed to disclose in response to a question by defense counsel. As to her, she admitted having falsely told her employer the reason for her quitting her job. Of course, she said she did it out of consideration for her employer. Nevertheless, it is plain that the jury could have completely ignored the so-called alibi evidence of plaintiff and his wife. We conclude that under the circumstances of this case, the trial court did not commit error in overruling the motion for new trial on the sufficiency of the evidence.

Neither party cites a single Georgia case dealing with the establishment of a defense of arson by an insurer. Both parties rely upon several Federal Court decisions which seem to agree that in an ordinary case, where the sufficiency of the evidence is in issue such a case may go to the jury if there

is proof of motive, of the fact that the fire was of incendiary origin, and the existence of opportunity for the insured to set the fire. Generally, opportunity is considered to be something more than mere proof that there was a possibility that the owner might physically have been able to set off the fire. We have described such a case, arising in the state of Florida, as follows:

> Though the case for arson is wholly circumstantial, we cannot deny that reasonable men might draw the inference necessary for Continental's arson defense. In a host of similar cases where sufficient motive and opportunity of the insured to commit arson were combined with proof of an incendiary cause of fire, this court and others have considered the arson defense to be supportable by inference. *Sullivan v. American Motorist Ins. Co.,* 605 F.2d 169 (5th Cir. 1979); *Crown Colony Distributors, Inc. v. United States Fire Ins. Co.,* 510 F.2d 544 (5th Cir. 1975); *Hanover Fire Ins. Co. of New York v. Argo,* 251 F.2d 80 (5th Cir. 1958); *Don Burton, Inc. v. Aetna Life & Cas. Co.,* 575 F.2d 702 (9th Cir. 1978); *Elgi Holding, Inc. v. Insurance Co. of North America,* 511 F.2d 957 (2d Cir. 1975); *Stein v. Girard Ins. of Philadelphia,* 259 F.2d 764 (7th Cir. 1958).

*Cora Pub., Inc. v. Continental Cas. Co.,* 619 F.2d 482, at 485 (5th Cir. 1980).

Although we need not decide whether a motion for directed verdict against the insurer should have been granted by the trial court, if requested, we do note that there is some evidence touching on each of the three requirements of motive, opportunity, and incendiarism that might well have been sufficient for the case to be submitted to the jury. In any event, there is more than sufficient evidence to satisfy the standard of review that is controlling here.

■ A further ground of appeal is appellant's contention that the trial court improperly denied him the privilege of showing that some of the debts which he owed at the time of the fire were subsequently paid off. In his presentation here, appellant seems to indicate that the evidence ruled out by the trial court dealt with events immediately following the fire. In point of fact, the evidence which the trial court ruled out dealt with the payment of two outstanding promissory notes which were past due at the time of the fire. When the trial court permitted plaintiff to make his proffer of proof counsel stated that one of the notes was paid off in 1979 and the other in 1980. The date of the fire was November 28, 1977. The trial court explained that these payments were too distant from the time of the fire to be considered by the jury as having any relevance as to the plaintiff's intent at the time of the fire. The trial court permitted evidence of payments made immediately following the fire. We conclude that these rulings were both correct. The appellant's condition two or three years after the fire was totally irrelevant to the issue to be presented to the jury. The appellant's reliance on *Elgi Holding, Inc. v. Insurance Co. of North America,* 511 F.2d 517 (2d Cir. 1975) is misplaced. In that case, the plaintiff attempted to show himself at trial as being a well-to-do businessman who had no financial troubles at the time of the burning. The insurance company, however, sought to rebut this argument by proving that, shortly after the fire, the insured had very serious financial problems. The court held that the evidence was admissible, as being competent relevant evidence under Rule 402. There is no doubt but that the financial condition of a plaintiff in such a situation both before and immediately following the fire is relevant. The evidence here sought to be introduced was too far removed to meet this standard.

■ Appellant also contends that the trial court erred in not granting him a new trial because it permitted the introduction of the pleadings in a certain lawsuit filed by the United States Government against the plaintiff seeking a return of monies which it claimed had been illegally received by the plaintiff. This document was admissible because, when the defendant's counsel inquired as to whether he was being sued by the United States at the time of the fire,

Powell expressed his uncertainty. He did not concede the point. Thereupon, the defendant introduced a suit to prove the existence of this claim against him by the United States.[2] This evidence was relevant to show the plaintiff's state of mind as to his financial condition at the time of the fire.

We have carefully considered the other arguments made by appellant here and find that they do not merit discussion.

The judgment is AFFIRMED.

2. This whole testimony is as follows:
Q: ... Now at the time of this fire had you been sued by anybody?
A: At the time of this fire?
Q: Yes, Sir.
A: Probably two or three years prior to the fire, I had been sued, yes, Sir.
Q: By whom?
A: The lumber company.
Q: Is that all?
A: The local lumber company in Douglasville.
Q: Is that all?
A: To the best of my recollection right now I think that's all I have been sued by. . . .
THE COURT: Let's then confine it to the period immediately preceding the loss.
Q: How about six months before the fire?
A: No, Sir, I hadn't been sued, to the best of my recollection. I don't recall back then.

Q: Isn't it true, Mr. Powell, that on July 11, 1977 you were sued by the Federal Government for taking educational benefits for classes you never attended in this Federal Court?
A: I don't know if I was sued or not, I did get a complaint. I answered that complaint. I ain't never heard of the outcome.
Q: Isn't it true you answered on August 8, 1977 signed it yourself?
A: Probably did. Yes.
Q: That was for $735.07 principal. Isn't that correct?
A: Yes, that was from the schooling I had had years before this. Three or four years. Four or five years.
Q: Since then a judgment has come against you?
A: It may have. I haven't been served with it.